IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 13-00431-01-CR-W-DW |
| MEIGEL M. CRADDOCK, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the court is Defendant's motion to suppress evidence. Defendant moves the Court to suppress all evidence obtained from the November 20, 2013 stop and subsequent frisk on grounds of Fourth Amendment violations. For the following reasons, Defendant's motion should be denied.

## *I. BACKGROUND*

An indictment was returned on December 11, 2013, charging Defendant with one count of being a felon in possession of a firearm. On March 17, 2014, Defendant filed a motion to suppress evidence (Doc. No. 17). The government responded on April 14, 2014 (Doc. No. 19). An evidentiary hearing was held on April 23, 2014. The government appeared by Assistant United States Attorney Mike Green. Defendant was present, represented by appointed counsel Ronna Holloman-Hughes. The government called Kansas City, Missouri Police Department Officer Charles Prichard to testify. The following exhibits were admitted into evidence:

Government's Exhibit 1:   Dash Cam Video (4783@20131120110546)
Government's Exhibit 2:   Defendant's statements to Detective Chris Gilio

1

## II.  EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1. On November 20, 2013, Kansas City, Missouri Police Officer Charles Prichard was on patrol duty (Tr. at 4).  A few minutes before 11:00 a.m., Officer Prichard was stopped at 43rd Street and Wabash facing northbound at a stop sign (Tr. at 4).  He observed a green Pontiac start to slow as if it was going to turn, hesitate for a few moments, then continue traveling straight on 43rd Street (Tr. at 4).  Officer Prichard thought this behavior was suspicious so ran the license plate through dispatch (Tr. at 4-5).  The plate came back as stolen (Tr. at 5).

2. Officer Prichard traveled in the same direction that the green Pontiac had gone (Tr. at 5).  Other vehicles came between Officer Prichard and the green Pontiac (Tr. at 5).  Officer Prichard observed the green Pontiac turn south on Prospect, but could no longer see the Pontiac by the time he turned onto Prospect (Tr. at 5).  Officer Prichard began to canvass the neighborhood (Tr. at 5).

3. Officer Prichard believed there was just one person in the vehicle, but could not tell the gender or ethnicity of the driver (Tr. at 25).

4. At approximately 11:06, Officer Prichard was traveling south on Wabash and noticed Defendant walking along the sidewalk (Tr. at 8-9, 11, 26; Gvt. Exh. 1 at 11:06:03).  He did not see anyone else on Wabash (Tr. at 9).  Officer Prichard then observed the stolen vehicle parked on the side of the street (Tr. at 9-10; Gvt, Exh. 1 at 11:06:08). He knew it was the stolen vehicle because the vehicle was the same color and had the same license plate number (Tr. at 10).

5. Officer Prichard turned his vehicle around and drove north on Wabash (Tr. at 10-11). Officer Prichard traveled one block before seeing Defendant behind him; he did not see any other people during this time (Tr. at 11-12). Defendant was standing in a yard in the 4600 block of Wabash (Tr. at 12).

6. Officer Prichard turn his patrol vehicle and, again, began traveling south on Wabash (Tr. at 12; Gvt. Exh. 1 at 11:06:53). Defendant was standing in the yard in front of 4610 Wabash; Officer Prichard stopped his vehicle behind a red Pontiac and approached Defendant (Tr. at 13, 29; Gvt. Exh. 1 at 11:07:12). Defendant did not attempt to run (Tr. at 29). Defendant was approximately fifty feet from the green Pontiac (Tr. at 17).

7. Officer Prichard asked Defendant what he was doing, to which Defendant responded he was going home (Tr. at 15; Gvt. Exh. 1 at 11:07:29). Officer Prichard asked Defendant his specific address, but Defendant could not provide one (Tr. at 15, 30). Defendant appeared nervous (Tr. at 15).

8. Because he believed Defendant had just gotten out of a stolen vehicle and was trying to elude him, Officer Prichard handcuffed Defendant and frisked him for weapons (Tr. at 16-17, 26; Gvt. Exh. 1 at 11:07:36). Officer Prichard was the only officer on the scene at this time (Tr. at 17).

9. Officer Prichard felt a key fob and key in Defendant's pocket while performing the frisk (Tr. at 19, 27-28). He believed this was significant as Defendant had just gotten out of a stolen automobile (Tr. at 19). Officer Prichard retrieved the key and noticed it contained the Pontiac emblem (Tr. at 19-20).

10. At approximately 11:08 a.m., an individual came out of the house next

3

door and said Defendant had just come out of his house so had not done anything (Tr. at 18, 31; Gvt. Exh. 1 at 11:08:13).

11. Officer Prichard checked Defendant's identification (Tr. at 20).

12. Officer Prichard took the key he retrieved from Defendant's pocket to see if it would unlock stolen vehicle (Tr. at 21). Officer Prichard successfully used the key to open the green Pontiac's driver's door (Tr. at 21; Gvt. Exh. 1 at 11:10:39). In doing so, he noticed a handgun sitting on the floorboard next to the driver's seat (Tr. at 21, 23). The handgun was loaded with eighteen rounds and had one in the chamber (Tr. at 23).

13. Upon learning Defendant was a convicted felon, Defendant was arrested for being a felon in possession of a firearm (Tr. at 23-24).

14. Officer Prichard did not go to the door of 4610 Wabash to see if anyone was home (Tr. at 27).

### III. LEGAL ANALYSIS

Defendant maintains Officer Prichard lacked reasonable suspicion to conduct a Terry stop and that the frisk exceeded its permissible scope. Based on these alleged illegalities, Defendant argues that the evidence found as a direct result of the stop, as well as subsequent statements, should be suppressed. I disagree.

To make an investigative stop, officers must have reasonable suspicion that criminal activity is afoot; the reasonable suspicion must be based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. Terry v. Ohio, 392 U.S. 1, 25-30 (1968). The existence of reasonable suspicion is determined from the totality of the circumstances in light of the officers' experience. United States v. Sokolow, 490 U.S. 1, 7-10 (1989); United States v. Cortez, 449 U.S. 411, 418 (1981).

The principal components of a determination of reasonable suspicion will be the events which occurred leading up to the stop, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion. Ornelas v. United States, 517 U.S. 690, 696 (1996). "A police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference." Id. at 699. Therefore, the facts must be viewed in light of the officer's experience and familiarity with criminal activity. United States v. Johnson, 64 F.3d 1120, 1124 (8th Cir. 1995). "Even innocent actions may give rise to reasonable suspicion if they warrant consideration under the totality of the circumstances." Id.

In this case, Officer Prichard observed a green Pontiac start to slow at an intersection as though it was going to turn, hesitate, then continue to travel straight. Finding this behavior suspicious, he ran the license plate through dispatch and learned that the green Pontiac was stolen. Officer Prichard canvassed the neighborhood and located the unoccupied stolen vehicle on Wabash parked on the side of the road. He then observed Defendant walking no more than fifty feet from the car, with nobody else visible in the immediate area. Officer Prichard approached Defendant who was standing in the yard of 4610 Wabash. Defendant appeared nervous and, although he told Officer Prichard he was going home, could not provide his home address. The totality of these circumstances justify Officer Prichard stopping Defendant.

Upon making a Terry stop, law enforcement officers are entitled to make "a limited warrantless search for the protection of himself or others nearby in order to discover weapons if he has a reasonable, articulable suspicion that the person [being detained] may be armed and presently dangerous." United States v. Hanlon, 401 F.3d 926, 929 (8th Cir. 2005)(quoting

5

United States v. Roggeman, 279 F,3d 573, 577 (8th Cir. 2002)). Here, Officer Prichard believed Defendant had just exited the stolen Pontiac and was trying to elude him. The Eighth Circuit has held that "when officers encounter suspected car thieves, they also may reasonably suspect that such individuals 'might possess weapons.'" Hanlon, 401 F.3d at 929 (quoting United States v. Rowland, 341 F.3d 774, 784 (8th Cir. 2003); United States v. Shranklen, 315 F.3d 959, 963 (8th Cir. 2003)). See also United States v. Cotter, 701 F.3d 544, 548 (8th Cir. 2012). Because Officer Prichard had reasonable suspicion that Defendant had been driving the stolen green Pontiac, he was also justified in suspecting Defendant might possess weapons.

"If an officer detects apparent contraband during a valid protective frisk, the officer may seize the item." United States v. Binion, 570 F.3d 1034, 1040 (8th Cir. 2009)(citing Minnesota v. Dickerson, 508 U.S. 366, 676-77 (1993)). This doctrine "extends to the lawful discovery of any incriminating evidence, not just contraband such as drugs." United States v. Bustos-Torres, 396 F.3d 935, 944 (8th Cir. 2005). The "plain feel" doctrine has been found to apply to keys in instances involving investigation of stolen vehicles. See United States v. Yancy, No. 11-20108-STA, 2012 WL 1252526 at *10 n.33 (W.D. Tenn. Apr. 13, 2012); United States v. Hunley, No. 07-CR-168A, 2010 WL 2510901 at *11 (W.D. N.Y. Feb. 26, 2010). Here, Officer Prichard felt a key fob and key in Defendant's pocket while performing the frisk. He was thus entitled to seize the key to investigate whether it belonged to the stolen green Pontiac. When the key successfully opened the Pontiac's door, Officer Prichard lawfully seized the gun that was in plain view on the floorboard. See United States v. Banks, 514 F.3d 769, 773 (8th Cir. 2008) ("Police may seize, without a warrant, an item that is 1) in plain view 2) when it is observed from a lawful vantage point, 3) where the incriminating character of the item is immediately apparent.")

## IV.  CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
June 24, 2014